JOHN T. MADDEN, WILLIAM R. COOK, EDWARD A. DUGAN, CHARLES J. SOMERS AND STEPHEN P. YOE v. THE STATE OF NEW JERSEY.

1. An indictment which sets out that certain persons, being members of, composing and acting as a municipal board, conspired to cheat the city of its moneys by corruptly purchasing supplies for the city at excessive prices, and by paying salaries to persons who rendered no services, is good.

2. After this general allegation of a corrupt intent, it is not essential that the statement of the means by which the conspiracy was to be executed should also show it.

On motion to quash an indictment brought into this court from the Hudson county Oyer and Terminer by writ of *certiorari.*

. The indictment in substance contains the following averments: That the prosecutors of this writ, being then and there street and water commissioners of Jersey City and then there constituting and composing and acting as the board of street and water commissioners of Jersey City, did conspire and bind themselves together by agreement to cheat and defraud Jersey City of its moneys, by willfully and corruptly purchasing from divers persons for and on behalf of Jersey City large quantities of supplies at prices greatly in excess of the true value thereof, and by paying for the same, and causing the same to be paid for out of the moneys of Jersey City at greatly excessive, exorbitant and fraudulent prices; and by willfully and corruptly making and causing to be made fraudulent contracts with divers persons for and on behalf of Jersey City for work, labor, services and supplies to be done for and furnished to Jersey City, whereby Jersey City was obligated to pay, and did pay, $20,000 over and above the value of such work and supplies; and by willfully and corruptly paying and causing to be paid large sums for salaries to persons who had rendered no services to Jersey City, whereby Jersey City was cheated of a large sum of money.

Then follows the allegation that in execution of the premises and in pursuance of said conspiracy the indicted persons did certain things, some of which will be noticed in the opinion.

Argued at June Term, 1894, before Justices DIXON, REED and ABBETT.

For the motion, *Charles D. Thompson* and *Charles L. Corbin.*

*Contra, Charles H. Winfield,* Prosecutor of the Pleas.

The opinion of the court was delivered by

REED, J. The first line of attack upon the above indictment is that it fails to show that the combination set out was

corrupt.   It is premised that the indictment does not merely
set out a conspiracy to cheat generally, but that it charges a
conspiracy to cheat by the use of certain specified devices and
in certain ways, specially named.   From this premise it is
said that the scope of the conspiracy is not only limited by
this particularization of the method by which it was to be
executed, but that the character of the devices set out must
exhibit a corrupt mind in the conspirators.

This contention cannot be successful.   It is true, as a mat-
ter of course, that the combination to be criminal must appear
on the face of the indictment to have been willful and cor-
rupt.   But I am unable to conceive how corruption can be
imputed more specifically than it is in the indictment now under
review.   The imputation is that the parties charged willfully
and corruptly conspired to cheat the city by paying out the
city's moneys to persons for work never performed.

The corrupt intent is imputed in the charge of the exist-
ence of a corrupt confederation, and in the statement that its
purpose was to cheat the city.   Indeed, after the employment
of this language any statement of the methods by which the
cheat was to be executed was unnecessary.   *State* v. *Young
et al.*, 8 *Vroom* 184.

In *Wood* v. *State*, 18 *Vroom* 461, a case very much relied
on as a decision which struck at the validity of the present
indictment, it was admitted that this generality of charg-
ing a conspiracy was sufficient.

In that case there was no charge of the existence of a cor-
rupt confederation whatever; nor was there a charge that the
object of the confederation was to cheat the county of Camden.
In such an absence of any general charge of a corrupt combi-
nation to cheat, it was essential that the facts contained in the
statement of the agreement and its character, as exhibited by
the scheme by which it was to be carried into execution,
should show a corrupt purpose.

It was because of the failure of the indictment in that case
to do this that it was quashed.

It is perceived that the indictment in that case differed from the one in this case in that important particular that we here have a general charge of a corrupt confederation, the purpose of which was to cheat the public.

Now, if it appeared in that part of the present indictment which discloses the means by which the cheat was to be accomplished, that there could be no possible intent to cheat involved in the conspiracy, it would present a feature which is now absent from the case. For it is not claimed that the statement in this bill of the means by which the concerted action is to be carried out in any way refutes the general charges contained in the indictment. It is only claimed that the statement of the means agreed on for the execution of the cheat should itself show, and does not show, a criminal or corrupt mental condition in the confederates.

But it seems obvious that so long as the statement is not inconsistent with the general charge of corrupt intention to cheat, that general charge remains unaffected. I see no substance in this position.

The next ground taken is that the indictment charges an impossible conspiracy. The line of argument by which this point is elaborated is this: The indictment, it is said, sets forth that the defendants, being officers and composing and acting as the board of street and water commissioners, did conspire to cheat and defraud Jersey City; therefore, it is argued, they, according to the theory of the indictment, must have conspired as a board, and so their agreement must have been an official act. An official act, it is further insisted, can be performed only by a vote of the members of the official body convened as a board; therefore, the conspiracy charged must have sprung out of and must be evidenced alone by the fact that these defendants as members of this board voted to accomplish a common purpose.

This line of reasoning, however, is grounded upon what I regard as an entirely mistaken view of the meaning of the language used in the indictment.

It may be admitted, as a matter of course, that the mere act of voting for the execution of a criminal or corrupt purpose, by several members of an official body at the same time, will not amount to a conspiracy, in the absence of an existing concerted understanding that the votes shall be so cast.

But the existence of a mutual understanding at the time the votes are cast, that they shall be so cast, no matter how brief the period of its existence before the voting, or in what manner such mutual understanding was arrived at, would amount to a conspiracy.

The voting might furnish some evidence of the existence of a previous understanding, but in itself would, at best, be but an overt act, which might be of service as a fact essential to complete the statutory crime of conspiracy. The gist of the offence would be the pre-existing understanding and agreement.

Now, the indictment charges that these persons, being members of this board, and composing and acting as such board, conspired to cheat by certain methods. But the indictment does not charge that the corrupt agreement was an official act. It only charges that these persons, when they agreed, were officials. Nor is the agreement charged confined to these members of the board. The charge is that they, together with other evil-disposed persons, conspired.

If these defendants composed the board, then these other persons were not members, and the agreement charged could not have been an official act of the board.

But, aside from this, it is clear that the statement of the official character of the defendants was only to give color to the whole transaction. It was to exhibit the significance of the agreement by setting out the ability of these persons to execute the agreement by the means charged. This ability springs out of the official character with which they were invested.

The charge is that these persons, while being such officers, entered into a corrupt confederation to cheat the city by the illegal exercise of a power which they possessed as a board to

purchase supplies for, and make contracts for work to be done for the city.

I perceive no defect in the indictment in this respect.

The counsel for the defendants present another objection to the indictment, which objection is also based upon the statement of the official character of the persons indicted.

This objection is that the indictment charges a conspiracy to commit a crime which could only be perpetrated by the joint action of the defendants; that the means by which the cheat was to be accomplished, involved the official conduct of the defendants, acting as a board, and so required the combined vote of the defendants to effectuate the design. This conspiracy charged is compared with an agreement between two persons to commit bigamy or adultery; for a conspiracy to commit which, it is claimed, the parties cannot be indicted, because the offence itself, which, by the agreement, is to be committed, involves the concerted action of all the parties.

It is not deemed useful to examine the legal proposition involved in the last sentence. Its limitations are the subject of remark by Mr. Bishop, in his work on *Criminal Law, vol.* 2, § 184, *and note.* The legal proposition is not applicable to the facts here presented.

It is first to be observed that the agreement is not to do an act requiring the vote of each defendant in favor of the cheat. Only a majority of votes were essential. An agreement entered into between all, that certain members, in numbers sufficient to constitute a majority, should vote to carry out the project, would be consistent with the charges in the bill.

But, entirely aside from this consideration, it is clear that the legal rule invoked is inapplicable; for, assuming that the execution of the agreement involved an indictable malfeasance in office, yet each of the defendants who participated in the act was punishable severally. Indeed, I do not perceive that this conspiracy stands upon any different footing from any other combination to execute a criminal or illegal act, by the power derived from an aggregation of individual acts.

It is finally insisted that the statement of the overt acts is insufficient. The defect pointed at is that it is not shown that the acts set out were done in execution of the conspiracy and to effect the object thereof.

The rule regulating this part of criminal pleading is that, while some overt act must be shown (*Wood* v. *State,* 18 *Vroom* 180), yet the statute does not exact that a full execution of the conspiracy shall be shown (*State* v. *Hickling,* 12 *Id.* 208); nor must it be understood that the acts set out constitute all the means which were used to accomplish the object of the conspiracy (*State* v. *Young et al.,* 8 *Id.* 184).

Now, the indictment charges that the defendants, in execution of the premises, *i. e.,* the conspiracy set out, and in pursuance of the conspiracy, having awarded a contract for work according to one set of specifications, made a contract for the execution of work according to a different set of specifications, which omitted part of the work included in the award.

This was only one of several acts set out, but is sufficient to fill the statutory requirement. It exhibits a step taken in the execution of the conspiracy, and whether it shows a completely accomplished cheat or not is immaterial.

The motion to quash is refused.